**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-259-006** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JAIONNE MILLER** | : | |

## MEMORANDUM AND ORDER

### I.   Introduction

Jaionne Miller's case calls upon us to consider the tragic trajectory of a young offender's life, the heartache which those criminal choices have created for Miller's family and concerned community members as well as the danger which Miller's actions create in terms of the safety of the community. This case comes before us for consideration of a motion for temporary release of the defendant. In this motion Miller advances two arguments. First, he asks us to reconsider our decision to detain him under 18 U.S.C. § 3142(e). In addition Miller seeks release pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

1

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. The defendant additionally moves for reconsideration of our initial detention decision. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

Jaionne Miller's choices have caused great pain for the defendant, his family, and those who care about him. But, sadly, those choices have also created a grave concern for public safety, particularly since Miller is alleged to have committed serious criminal offenses while on bond awaiting trial for drug trafficking. We acknowledge the gravity of the defendant's public health concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized

assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.   **Factual Background and Procedural History**

On December 18, 2019, the defendant and others were charged in a superseding indictment with conspiracy to distribute controlled substances, possession with the intent to distribute controlled substances, distribution of a controlled substance, and possession of a firearm in furtherance of drug trafficking in violation of 21 U.S.C. §§ 841(a) and 846 and 18 U.S.C. § 924(c). Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings were then conducted in this case on January 16, 2020.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: The defendant was nineteen years old at the time of his arrest and a lifelong resident of Penbrook, Pennsylvania. He reported no physical or mental health concerns but reported using illicit substances since he was fifteen years old. His criminal history included a disorderly conduct charge in 2018 and his pending local charges of possession with intent to deliver and carrying a firearm without a license. The pre-trial services report also recommended the defendant's

detention based upon a careful evaluation of the following individual characteristics of the defendant: the nature of the charged offenses and prior arrest; substance abuse history; history of weapons use; and noncompliance with pretrial, probation or supervised release conditions. Indeed, the instant charged offenses were allegedly committed while the defendant was under pretrial supervision in Dauphin County.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: the lengthy incarceration period the defendant faces on the charged offenses; his participation in criminal activity while on supervision; his history of substance abuse; lack of stable employment; and prior violations of his bail conditions. (Doc. 85).

Several specific factors compelled this conclusion on our part. First, while we recognized Miller's relative youth, we noted that he faces federal charges that involve a particularly dangerous combination—drugs and firearms. Thus, Miller was subject to multiple statutory presumptions which favored his detention by virtue of the charges brought against him and the grand jury's finding that he committed these grave drug trafficking and firearms offenses. Further, the indictment alleged, and the

government proffered evidence that Miller continued to indulge in drug dealing even after he had been released on bail on pending state drug charges, misconduct which strongly suggested that Miller was not amenable to bail supervision. Moreover, while Miller's mother was offered as a third-party custodian, the fact that Miller was alleged to have engaged in some of this illicit activity from the alleyway behind the family home left us unconvinced that Miller would respond to maternal authority since he chose to traffic drugs from the backyard of his mother's home.

Cast against this backdrop, the instant motion for temporary release makes two arguments. First, it invites us to reexamine our initial detention decision under 18 U.S.C. § 3142 (e) given the new proffered third-party custodian, the defendant's maternal grandmother. In addition, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Beyond these generalized concerns, Miller alleges that, as a child, he experienced asthma. The record, however, undercuts the gravity of this medical concern, since there is no indication that Miller currently actively treat this condition. Quite the contrary, the evidence reveals that, prior to his arrests, Miller was a high

school athlete who regularly engaged in strenuous physical activity with no apparent ill effects.

The Government, in turn, opposes this motion, arguing that the defendant has not met his burden to justify his release pending trial. We agree, and for the reasons that follow, we will deny the defendant's motion.

## III.   <u>Discussion</u>

### A. <u>Release and Detention Under 18 U.S.C. § 3142</u>

Miller's motion is cast both as a motion seeking temporary release under 18 U.S.C. § 3142 (i), and as a request for reconsideration of our initial detention order which was entered pursuant to 18 U.S.C. § 3142(e). Accordingly, this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." <u>Id.</u>; <u>see also</u> <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the

factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

However, beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a

finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United

8

States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency

motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . .
> prison system, particularly for inmates . . . . But the mere existence of
> COVID-19 in society and the possibility that it may spread to a
> particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir.

Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling

reasons which now warrant temporary release from custody must take into account

the important considerations of public safety and flight which animated the original

decision to detain the offender pending trial. Thus, "in considering the propriety of

temporary release, the court would need to balance the reasons advanced for such

release against the risks that were previously identified and resulted in an order of

detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar.

27, 2020). In practice, therefore, a decision on a motion seeking release under §

3142(i) entails an informed judgment assessing both individual health concerns and

broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the
> defendant's pretrial detention, (2) the specificity of the defendant's
> stated COVID-19 concerns, (3) the extent to which the proposed release
> plan is tailored to mitigate or exacerbate other COVID-19 risks to the
> defendant, and (4) the likelihood that the defendant's proposed release
> would increase COVID-19 risks to others. The court will not
> necessarily weigh these factors equally, but will consider them as a
> whole to help guide the court's determination as to whether a
> "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.[1]

### B. **The Defendant's Motion for Temporary Release Will Be Denied.**

We begin by considering whether Miller's case falls within the safety valve provision of 18 U.S.C. §3142(i). Our analysis of this issues proceeds from the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent

---

[1] We note that the specific statutory context of § 3142, which controls here, and our prior findings that the defendant's release would present a danger to the community thoroughly distinguish this case from Thakker v. Doll, 1:20-CV-840, an immigration detention case relied upon by the defendant in his motion. Simply put, this case involves an entirely different statutory framework, and the compelling public safety considerations inspired by our finding that this defendant presented a danger to the community were completely absent in Thakker.

to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, the defendant does not allege any specific concerns regarding the virus, such as immediate or imminent physical health-related concerns, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, to warrant his pretrial release. During a hearing on this matter, the defendant's mother and a proposed third-party custodian, his grandmother, testified that the defendant suffered from childhood asthma, a condition which the CDC has deemed to be a preexisting condition that places an individual at a higher risk of contracting COVID-19. However, these individuals also testified that the defendant played football in high school at two different schools, and that he also was on the wrestling team. Thus, there is no indication that the defendant's childhood asthma was so severe that it

interfered with his ability to play sports, or engage in other strenuous activities. Therefore, this reported childhood condition which is not presently being treated and does not currently restrict Miller's activities is entitled to little weight in our determination of whether compelling reasons exist which justify the defendant's release under § 3142(i).

Moreover, even if the defendant was currently suffering from asthma, we have found numerous cases from courts who have had the opportunity to consider whether asthma justifies pre-trial release, and the vast majority of courts have determined that it does not. See, e.g., United States v. Christian, 2020 U.S. Dist. LEXIS 60103 (D. Md. Apr. 6, 2020) (denying temporary release on grounds of underlying asthma diagnosis); United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (collecting cases) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release); United States v. Pritchett, CR 19-280, 2020 WL 1640280, *3 (W.D. Pa. Apr. 2, 2020) (asthma diagnosis insufficient to grant temporary release); United States v. Crosby, 2020 U.S. Dist. LEXIS 58189 (D. Md. Apr. 2, 2020) (previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler insufficient to allow temporary release); United States v. Jones, 2:19-CR-00249-DWA, 2020 WL 1511221, *3 (W.D. Pa. Mar. 29, 2020) (hypertension, sleep apnea, and asthma were not sufficient to grant temporary release); United States v. Gileno, 2020 U.S. Dist. LEXIS 47590 (D. Conn. Mar. 19, 2020) (high blood

pressure, high cholesterol, asthma, and allergies insufficient to allow temporary release). These cases are particularly important to our analysis here, given that the defendant has not provided us with any documentation of this alleged medical condition.

Additionally, the defendant does not provide us with any evidence to suggest that his proposed release plan to a third-party custodian would mitigate his risk to exposure of COVID-19 or the risk to others. Rather, the motion asserts generally that the prisons do not allow for proper compliance with procedures that tend to limit the spread or exposure of the virus. On this score, the government has attached a memorandum from the Adams County Prison, where the defendant is currently detained, which outlines the additional steps during this time to insulate and protect inmates from COVID-19, including placing the facility on lockdown, limiting inmate-to-inmate contact, and implementing enhanced screening of staff and inmates and increased sanitation protocols. (Doc. 130-1).

However, we must weigh these health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. Moreover, in this motion, the defendant expressly invites us to reconsider this initial detention decision based upon the proffer of a new proposed third-party custodian the defendant's maternal grandmother. Having conducted this review, we find that the following factors, unique to the defendant, continue to compel the

decision to detain the defendant as a risk of flight and danger to the community. Jaionne Miller is charged with drug and gun offenses which trigger two separate presumptions in favor of detention. These twin presumptions are grounded on the well-founded belief that armed drug trafficking is both dangerous, and potentially deadly. Further, we note that the incarceration period the defendant faces on the charged offenses is lengthy; his prior criminal history is significant; and he has a history of substance abuse. (Doc. 65). The defendant's motion does not address these very serious and grave considerations that ultimately led to the defendant's detention in the first instance, nor does it consider the risk to the community should the motion for release be granted.

These concerns, particularly the fact that the instant offenses were allegedly committed while the defendant was on pretrial supervision in Dauphin County, lead us to conclude that the defendant shall remain detained pending trial. We also are constrained to observe that Miller is alleged to have engaged in acts of drug distribution as recently as January 2020, just days prior to his arrest on this federal indictment, and Miller persisted in daily drug use while on state bail supervision. These activities undermine any confidence that we have that Miller would comply with conditions of release.

In reaching this result, we recognize Miller's relative youth and acknowledge that the defendant's family, including his mother and grandmother, along with others

in the community stand willing to take responsibility for the defendant should he be released. We credit this testimony, commend the good faith of Miller's family and friends, and applaud their willingness to take responsibility for the defendant. However, the presumption of detention that attaches to the instant offenses, as well as the defendant's actions and prior criminal history, do not inspire faith that he would follow any conditions of release that we would set. Accordingly, notwithstanding the undoubted good faith of these third parties, when we consider Miller's conduct we find that we have little confidence in his good faith given the grave misconduct he is alleged to have committed while on bail supervision. Simply put, what now confines Miller are constraints forged through his own misconduct during the past two years. Therefore, the defendant's motion for reconsideration of our initial detention order will be denied.

### C. <u>Conclusion</u>

Weighing and balancing these countervailing considerations we conclude that the safety concerns that led us to order the detention of the defendant pending trial have not been overcome by the defendant's generalized concerns regarding the spread of or exposure to the COVID-19 virus while incarcerated. Based upon these findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142 will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a

renewed request for release if—at some point in the future—it becomes clear" that

there are compelling reasons that justify the defendant's release. <u>United States of

America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30,

2020). Therefore, this order is entered without prejudice to renewal of this motion at

some future date should the defendant's circumstances materially change.

      An appropriate order follows.

*/s/ Martin C. Carlson*

Martin C. Carlson

United States Magistrate Judge

DATED: April 22, 2020

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-259-006** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JAIONNE MILLER** | : | |

<u>**ORDER**</u>

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 22d day of April 2020.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge